## ROBERTS *v.* AMERICAN BUILDING & LOAN ASSOCIATION.

### Opinion delivered July 8, 1896.

BUILDING ASSOCIATION LOAN—PREMIUM.—Where a mortgage given to secure a loan by a building association for one thousand dollars provides that, in case of default, the association shall have the election to foreclose, not only for the sum so loaned with interest, but also for a "premium" of one thousand dollars bid by the borrower for the loan, equity will not decree for the premium in addition to the loan and interest, as to do so would be tantamount to enforcing a penalty for a breach of contract.

SAME—RULE FOR COMPUTING AMOUNT DUE.—The rule for determining the amount which is due on a loan by a building association to a member, on the latter's default, is to ascertain the amount of stated dues and interest which will become due during the probable

existence of the association; then find the principal which, with interest for the supposed time, will amount to the dues and interest already calculated; this will be the present value of the anticipated payments; to this principal add the arrearages due and the fines for the time between the date of default and the entry of the decree of sale.

BUILDING ASSOCIATIONS—FINES.—The monthly fines provided for by the by-laws of a building and loan association are not intended as penalties, but are to be considered as liquidated damages, fixed by consent of the parties, to indemnify the association for the loss it has sustained by reason of the failure of the defaulting member to make prompt payments; and where prescribed by the charter or by-laws, in precise and unequivocal terms, so as to be readily understood by members, such fines will be enforced, independently of statutory provisions, if reasonable in amount and equitable.

SAME—REASONABLENESS OF BY-LAW.—A provision in the by-laws of a building association imposing on its stockholders a fine of "ten cents per share, to be imposed for each and every month that payment is not made," is reasonable.

Appeals from Carroll Circuit Court in Chancery, Western District.

EDWARD S. McDANIEL, Judge.

STATEMENT BY THE COURT.

The appellee brought this suit to foreclose a mortgage which was given to secure the following note, to-wit:

"$2000.00    MINNEAPOLIS, MINN., Dec. 11th, 1888.

For value received, on or before nine years from date, I promise to pay to the order of the American Building & Loan Association, at its home office in Minneapolis, Minnesota, the sum of two thousand dollars, with interest at the rate of six per cent. per annum on the sum of one thousand dollars, payable monthly. It is understood that this note is given for a loan obtained on twenty shares of stock of said American Building & Loan Association, and if the maker hereof fails to make any monthly payments on the said stock, or to pay any installment of the interest for a period of six months

after the same is due, then the whole amount of this note shall at once become due and payable. But if the maker hereof shall pay all installments of the interest which become due hereon, and all fines and monthly payments which become due on said stock until said stock becomes fully paid in, and of the value of $100 per share, and before any of said installments of interest or monthly payments shall have been past due for a period of six months, then, upon the surrender of said stock to said association, this note shall be deemed to be fully paid and cancelled. This note is understood to be made with reference to and under the laws of the state of Minnesota.

[Signed.]   MARY A. ROBERTS,
LEONIDAS ROBERTS."

On the margin of the face of the note is the following: "If this note is paid before seven years from date, there shall be allowed such rebate from the amount of the premium as the board of·directors of said association shall deem equitable.

Premium $1000.00.                    Loan $1000.00."

The mortgage executed at the same time by appellants recites that the conveyance of the land therein described is upon a consideration of two thousand dollars paid to appellants by the appellee. The mortgage contains the following conditions, viz.: "This mortgage being given to secure a loan made on twenty shares of stock in said American Building & Loan Association, the monthly payments of which amount to $12 per month, said party of the first part does further covenant and agree to make the said monthly payments on said stock as they shall become due until said stock shall become fully paid in. Provided, nevertheless, that if the said party of the first part * * * shall pay to the party of the second part, at its home office, one thousand

dollars and interest, according to the conditions of one certain promissory note, bearing even date, payable after three years from, and before nine years from, date for the sum of one thousand dollars, with interest on the same at 6 per cent. per annum before and after maturity until paid, interest payable monthly, then this deed shall be null and void; otherwise, to remain in full force and effect. But if default be made in the payment of said sum or sums of money, or of any installment of interest thereon, or of any monthly payment on said stock for a period of six months after the same shall fall due, or any part of either, * * * * or in any condition in this mortgage contained, then in either or any such case the whole principal sum or sums secured by this mortgage, and the interest thereon accrued up to the time of such default, shall, at the election of said second party, its successors or assigns, or .his or their agent, become thereupon due and payable immediately upon said default, and the said party of the first part does hereby authorize and empower the said party of the second part, its successors or assigns, the owner hereof, its agent and attorney, at its or their election, and without notice of such election, to foreclose at once this mortgage for the whole of said principal sum or sums and accrued interest as herein provided, or to foreclose for such sum or sums and interest and money paid as may be due and payable by the terms of said note hereby secured, and sell the said hereby-granted premises at public auction, and convey the same to said purchaser in fee simple, agreeably to the statutes in such case made and provided, and out of the moneys arising from such sale to retain the principal and interest then accrued on the sum or sums so elected to be foreclosed for, together with any and all costs and charges of such foreclosure, including one hundred dollars attorney's

fees for foreclosing this mortgage; paying the overplus, if any, to the said party of the first part," etc.

The complaint alleged that the by-laws of the association provide that each member should pay his share of capital stock in monthly installments of sixty cents upon each share, beginning thirty days from the date of his certificate of stock, and that every member neglecting to pay such installment when due and payable should forfeit and pay to the association ten cents per month as a fine for each share of stock so owned by him, and so in default.

The breaches of the condition of the mortgage alleged were that the monthly installments of dues on said twenty shares of stock due and payable on the 11th day of May, 1890, and for each subsequent month, amounting to $84.00, and the installments of interest for the same period, amounting to $35.00, and the fines accruing for the same period, amounting to $14.00, had not been paid. The amount claimed to be due at the institution of the suit was two thousand dollars, with interest on one thousand dollars at six per cent per annum from the 11th day of April, 1890, and an attorney's fee of $100.00; and plaintiff elected to claim for the two thousand dollars, with interest at 6 per cent on one thousand, and for $100.00 attorney's fee, and asked judgment accordingly, and for sale of twenty shares of stock to satisfy same, and for sale of property mortgaged, and the proceeds to be applied to the payment of the remainder of said judgment, if any, after application of proceeds of sale of stock. The bill was filed 18th of November, 1890. The answer admitted the execution of a note for one thousand dollars, but denied that a note of two thousand was executed. It admitted the execution of the mortgage, but alleged that it was to secure the note for one thousand dollars. The execution of the note sued on is denied.

Usury, and a failure to comply with the law authorizing foreign corporations to do business in the state, were set up, but these defenses have been abandoned here.

The case was tried upon the pleadings, exhibits, and depositions of witnesses, and the court found the issues for the plaintiff, and that the note sued on was executed, and the mortgage also, for the purpose of securing it according to its terms; that monthly dues to the amount of two hundred and sixty-four dollars had been paid; that interest on the advancement had been paid to April 11th, 1890, and that $84 in monthly dues, $35 in interest to November 11th, 1890, and $14 in fines were in arrears at the institution of the suit; that there had been default in the payment of monthly installments for more than six months; that appellees were entitled to monthly dues on stock for nine years, amounting to twelve hundred and ninety-six dollars, less two hundred and sixty-four dollars paid thereon, leaving a balance of one thousand and thirty-two dollars, with interest on the advancement from April 11th, 1890, to November 18th, 1890, amounting to thirty-six and 15-100 dollars, and fourteen dollars in fines, making an aggregate of one thousand eighty-two and 15-100 dollars due at the institution of the suit. To this sum was added interest at six per cent. from November 18th, 1890, the time of the institution of the suit, to August 17th, 1893, the date of the decree, and judgment was rendered for $1260.70. Appellants were allowed thirty days to pay off and satisfy the decree, surrender their stock, and have mortgage satisfied and cancelled. Upon failure to do so, the equity of redemption was foreclosed, and sale of the property ordered. From the decree this appeal was taken.

*C. D. James*, for appellant.

1.   The most appellee can claim under the note and mortgage was $1,000 and six per cent. interest to the date of filing the suit, less the payments made, amounting to $900.31.

2.   It was error to give judgment for fines.   We have no statute authorizing the imposition of fines, nor does the statute of Minnesota authorize it.   They are a penalty, and cannot be enforced.   2 Am. & Eng. Enc. Law, p. 620; 7 Neb. 173; *Ib.* 181; 68 Pa. St. 167; 82 *id.* 180; 89 *id.* 15.   Nor is interest chargeable on fines. 28 L. T. Rep. (N. S.), 55; 2 Am. & Eng. Enc. Law, p. 612; 5 Duer, 671.

3.   The proof shows that the note was only for $1,000, and that it was changed to $2,000, and the decree should be reversed.   41 Ark. 294; 17 S. W. 706.   The alteration was material, and avoided the note.   49 Ark. 140.   The note being void, the security cannot be enforced.   34 Ill. 100; 19 S. C. 264; 1 Spear, Eq. 142; 65 Me. 195; Parsons, Bills and Notes, 572; 2 Barb. Ch. 135.

*L. H. McGill*, for appellee.

1.   The obligation was for $2,000.00.   There is ample evidence to support the finding of the chancellor on this point.   There was no spoliation.   The burden was on appellant.

2.   The mortgage secured the payment of all dues, interest, and fines, as expressed in the contract.   A simple repayment of the advance with interest would not be a compliance with the contract.   Endlich, B. Ass'ns (2 Ed.), secs. 124, 129, 133, 434, 435, 442-3, 149 ; 56 Ark. 335.

3.   The court properly gave judgment for the accrued fines.   Endlich, Bldg. Ass. 415, 417.   Fines are a necessary incident.   They are not penalties, but liquidated damages for breach of contract.   Endlich, Bldg. Ass. 412, 418 ; 117 Pa. St. 1 ; 2 Am. St. 639.

4. The judgment was not excessive. The Maryland and Ohio rule is the proper one, and is approved by Endlich, Bldg. Ass. 386. See 10 Md. 397 for Maryland rule. Tested by this rule, the judgment was less than the amount appellee was entitled to claim.

5. A reasonable attorney's fee may be stipulated for and enforced. 1 Jones on Mortg. 359.

WOOD, J., (after stating the facts). 1. The appellee was duly incorporated under the laws of Minnesota. Its articles of incorporation and by-laws, which were in evidence, show that it is a mutual building and loan association, having the same plan or scheme as that in general use by such associations. For a description of such associations, see note by Freeman in 69 Am. Dec. 151. The purpose of this association was to exact of appellant an obligation equal to the advancement which it had made her, together with the premium which she had bid for same, the whole amount being equal to the par value of her twenty shares of stock at maturity. And this purpose it carried out, as appears from the face of the note itself and the mortgage, as well as from the testimony of witnesses. While there is testimony to the contrary, it is improbable and unreasonable. The ruling of the trial court upon the issue of *non est factum* was correct.

This issue, however, is immaterial. For, although the note specifies that, in case of default, the "whole amount of the note is at once due and payable," and although the mortgage gives appellee, in case of default, "the election to foreclose for the whole of said principal sum," still a court of equity would not decree for the full amount of the advancement and interest, together with the premium. Such a decree would be tantamount to enforcing a penalty for breach of contract. *Hagerman* v. *B. & S. Ass.* 25 Ohio St. 205, 206. The evident design of the parties to this contract was to have the

*Premium for loan not collectible.*

debt discharged according to the system peculiar to
building and loan associations.

<span style="float:left">Rule for<br>computing<br>amount<br>due.</span> This contract, then, binds the appellant to pay
monthly installments of interest on the advancement,
monthly dues on stock, until its maturity (not to exceed
a period of nine years), and fines assessed for failure to
make stock payments or dues as specified.   Default
having been made for more than six months in the pay-
ment of the installments of interest and monthly dues,
foreclosure proceedings were begun, and the only real
question here is as to the amount of the decree.

The lower court charged the borrower with the
whole amount of dues for nine years, and added to this
sum the interest and fines in arrears at the institution
of the suit.   From this sum was deducted the amount
of dues already paid on stock, and to the balance was
added six per cent. interest per annum from the institu-
tion of the suit to date of the decree, making the sum of
$1,260.70, for which decree was entered.   Was this
correct?   The rule for determining the amount which
we think most nearly enforces all the contract obliga-
tions is "to ascertain the amount of stated dues and
interest which will become due during the future exist-
ence of the corporation, as estimated; then find the
principal which, with interest for the supposed time,
will amount to the dues and interest already calculated;
this will be the present value of the anticipated pay-
ments; to this principal add the arrearages due, and the
fines for the time between the date of default and the
entry of the decree of sale."

It was in proof, by the actuary of the association,
that the stock would have matured in ninety eight
months.   The date of the certificate of stock was June
11th, 1888.   The date of the decree was August 17th,
1893.   The time therefore for the stock to run before
maturity from date of decree was 35⅘ months.   Dues,

interest and fines were in arrears from April 11th, 1890, or forty months and six days. Then, from this data, applying the above rule, we have the following:

Dues, 35⅘ months at $12.00 per month........$429 60
Interest on $1000 (advancement) for 35⅘ months,
    at $5.00 per month...................... 179 00
                       Total, $608 60

Now, the principal which will amount to this sum in 35⅘ months at 6 per cent interest is $516.20, which is ascertained by dividing the $608.00 by $1,179, the principal and interest on one dollar at 6 per cent for 35⅘ months. The present value of the anticipated payments then is $516.20. To this add arrearages:

Dues 40 months at $12.00 ...................$ 480 00
Interest 40 months at $5.00.................. 200 00
Fines 40 months at $2.00 .................... 80 00
                     Total, $1,276 20

This sum represented the amount for which the mortgage should have been foreclosed. But the court rendered judgment for $1,260.70, making a difference in favor of appellant of $15.50. So it is clear that she has not been prejudiced by the decree. The above rule is that announced by the superior court of Cincinnati. Endlich, Building Associations, sec. 386.

The rule, as announced in a leading case in Maryland, is "to ascertain by proof the probable duration of the society, then to estimate the aggregate amount of the weekly and monthly installments payable during that time, from that sum rebate a just amount of interest, and add thereto the arrearages due, after allowing for payments made to the society, and the sum thus ascertained is the amount which the mortgagee is entitled to receive *in præsenti* in satisfaction of the mortgage."

*Robertson* v. *American Homestead Asso.*, 10 Md. 397; S. C. 69 Am Dec., and cases cited in note.

The application of this rule to the facts of this record would give substantially the same result as above. Either of these would be just to the borrowing member and to the association. But we prefer the former, because it gives a simple, certain, and accurate method of arriving at the amount, whereas, by the latter rule, the amount of interest to be rebated is not fixed, but such as the chancellor may deem just. The rule we have approved is announced upon the basis of a final and complete foreclosure by sale of the property mortgaged, and a termination of appellant's membership in the association. There is no intimation anywhere in the record that appellant desires or would be willing to continue her membership in the association. She repudiated the contract as a real building and loan contract, insisting that it only binds her to repay the amount advanced at six per cent. interest, and that the mortgage only secured that amount, *i. e.*, that the contract was for a straight loan.

When fines
enforcible.
2. The amount of the decree, under the rule announced, as well as the rule adopted by the trial court, includes fines for failure to make monthly payments. The by-laws authorize a fine of "ten cents per share to be imposed for each and every month the payment is not made." The success of the building and loan association scheme depends upon the certainty and regularity with which members pay their dues. Fines, strictly as such, imposed merely by way of punishment for a breach of contract, a court of equity would not enforce. But what is usually designated as "fines" in a genuine building and loan association is intended for, and does subserve, a different purpose. They are treated by the best authorities as liquidated damages, fixed by consent of the parties, to indemnify the association for

the loss it has sustained by reason of the failure of the defaulting member to make prompt payments. *Shannon* v. *Howard Mut. Bldg. Ass'n*, 36 Md. 383; *Ocmulgee Building & Loan Ass'n* v. *Thomson*, 52 Ga. 427; 2 Am. & Eng. Enc. Law, p. 620, and authorities cited.

Dues being the vitalizing principle in the whole plan, and the measure of the prosperity of the whole depending upon the promptness with which each member discharges his obligation to every other to pay them, it is but just that each delinquent may contract as far as possible to make good the loss occasioned by him.

In most of the states, the legislature, recognizing that some such power is indispensable to preserve the equality of burdens, while each is sharing equally in the profits, has enacted laws providing for the imposition of fines. But, in the absence of such statutes, it is within the province of a court of chancery to enforce such an essential regulation, when adopted by the association. Those who become members or stockholders of an association having such a by-law, of course, approve and accept same, and should be bound thereby, provided said by-law be reasonable. Endlich, Building Associations, 415; *Shannon* v. *Howard Mut. Bldg. Ass. supra.*

Mr. Endlich, speaking of a member who defaults in the payment of dues, says: "He will be getting an advantage over and above his fellows; he will have had the use of his subscription money for a longer period than they had theirs, and, besides, he will have his proportionate share of the gains made upon all their prompt payments, whilst he will lose only the trifling amount that would have come to him as his proportionate share of the profits, which, if he had paid his dues properly, would have accrued from such payment in the interval between the day when it was his duty to make it and that upon which he did make it. It follows that the

society is, in good conscience, entitled to be made whole for the injury resulting from tardy payments." Endlich, Bldg. Ass. sec. 412. In *Goodman* v. *Durant Bldg. & Loan Association*, 14 So. Rep. 146, Chief Justice Campbell said: "What is called a fine (merely an agreed sum as liquidated damages) is imposed for every default in payment, as a spur to prompt payment, so as not to derange the process of compounding, which must fail if there is want of payment as agreed, and failure of which would cause failure of the scheme. We see nothing wrong in members of full age and *compos mentis* mutually binding themselves to so beautiful a scheme for reciprocal advantage, and being held to the performance of what they had agreed." Mississippi, like Arkansas, has no statutes on the subject.

We are aware that some courts regard fines as penalties, and will not lend their aid to enforce them, independent of statutory enactment. *Lincoln Bldg.*, *etc.*, *Ass.* v. *Graham*, 7 Neb. 173; *Lincoln Bldg.*, *etc.*, *Ass.* v. *Benjamin*, 7 Neb. 181; *Jarrett's Ex'or* v. *Cope*, 68 Pa. St. 67; *Link* v. *Germantown Bldg. Ass.*, 89 *id.* 15. But the rationale of the doctrine of fines for the non-payment of dues is that they are essential to the proper exercise of the express powers conferred upon building and loan associations in their incorporation. And therefore they have the right to impose them, whether any express warrant is found for it in the statute under which they are incorporated or not. They have such power by implication. Endlich, Bldg. & Loan Ass. sec. 417; *Goodman* v. *Bldg. & Loan Ass.* 14 So. *supra*.

It has been suggested that the menace of foreclosure, which overhangs the borrower in case of default, is a sufficient stimulus to promptness, and that, therefore, the by-law imposing fines is unnecessary, and should not exist. But the investor has no such stimulus

to enforce punctuality on his part.  The imposition of fines for non-payment of dues must apply to every member alike,—the investor as well as the borrower.

The power to impose fines, however, if unrestrained, *Fines must be reasonable.* might be abused, and thus cause injustice and oppression.  Therefore, courts of equity, operating with or without the sanction of the statute, will see that fines are reasonable in amount, and equitable in every respect, having in view the object to be attained by them.  They must be prescribed by the charter or by-laws, in precise and unequivocal terms, so as to be readily understood by the members.  Endlich, Bldg. Ass. secs. 419–22; *Occidental Bldg. & Loan Ass'n* v. *Sullivan*, 62 Cal. 394; Davis, Law of Building, etc., Societies, p. 36; *Mulloy* v. *Fifth Ward Bldg. Ass.*, 2 McArthur (D. C.), 594.  The by-law under consideration conforms to these requirements.

Since the decree is for a sum less than it might have been, under the rule announced, it is unnecessary for us to determine whether the small interest on fines included in the decree is error.  If so, it was not prejudicial.

Affirm.