WILLIAM M. HOLMES *et al.*

*v.*

ARAMENTIA M. SMYTHE *et al.*

*Filed at Springfield September 30, 1881.*

1. CONSTITUTIONAL LAW—*special legislation—of the act concerning loan associations.* The act of April 4, 1872, entitled "An act to enable associations of persons to become a body corporate to raise funds to be loaned only among its members," is a general law, applicable to all the citizens of the State who choose to bring themselves within the relations and circumstances provided for by it, and is not within the prohibition of the constitution (section 22 of article 4), which declares that the General Assembly shall not pass local or special laws "regulating the rate of interest on money," or "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever."

2. USURY—*of contracts with an association organized under the act of April 4, 1872, "to enable associations of persons to become a body corporate to raise funds to be loaned only among its members."* Where a person who is a member of such association obtains a loan of money therefrom, under the system of bidding the highest premium for the loan, as provided for in the act, coupled with other conditions authorized and prescribed therein, the transaction will not be regarded as usurious, although it may result that the borrower will be required, under the provisions of the contract, to pay a greater price for the use of the money advanced to him than would be allowable under the general law regulating the rate of interest. The contract being of such character that it is only upon the failure on the part of the borrower to perform its conditions that such result would follow, the obligation to pay an amount in excess of the legal rate of interest might be regarded as in the nature of liquidated damages, and not in any sense a regulation of interest upon money. This would be the proper view even treating the transaction as a loan.

3. But a transaction of such character, being in its features and conditions in conformity with the provisions of the act, might rather be regarded as in the nature of a sale by the person to whom the money was advanced, of his shares of stock to the association, than as a loan.

APPEAL from the Circuit Court of Piatt county; the Hon. C. B. SMITH, Judge, presiding.

Appellees filed their bill in equity in the circuit court of Piatt county against appellants, alleging that appellee Calvin R. Smythe was the owner of certain lots therein described, which he, with his wife, the appellee Aramentia M. Smythe, occupied as a homestead; that on October 4, 1875, appellees executed a mortgage on said premises to the appellant the Monticello Mutual Building, Loan and Homestead Association, to secure the payment of a note for $600, with interest at the rate of ten per cent per annum; that the only consideration for such a note was a loan by said association to said appellee Calvin R. Smythe, of $420; that said association charged $180 for the loan of said $420; that said appellee Calvin R. Smythe has since paid said association the sum of $173.41; that said association advertised said premises for sale on December 2, 1878, without having obtained a judgment or decree therefor; that said advertisement claimed

$873.40 to be due; that on December 2, 1878, the solicitor of said association sold said premises to said association for $633.33; that at such sale the bidders were notified that the amount exceeding $350 was for usurious interest; that at the time of such sale there was only due $350, which appellees were ready and willing to pay, and have since offered to pay, but that said association has refused to receive the same in satisfaction of said note; that said sum of $180 was usurious; that appellees have continued to occupy said premises as a homestead; that at the February term, 1879, of the Piatt circuit court, said association obtained a judgment against the appellee Calvin R. Smythe, for the possession of said premises; that the appellee Aramentia M. Smythe was not a party to such judgment, although she was in possession of said premises when said suit was commenced, and occupied the same with her husband, the appellee Calvin R. Smythe, as a homestead; that a writ for the possession of said premises was issued on such judgment against the appellee Calvin R. Smythe, and directed to the appellant Holmes, sheriff of Piatt county, etc.,—and the prayer is, that the sale may be set aside and the deed declared void, that an account may be taken, etc., and that appellants be enjoined from dispossessing appellees, etc.

The answer of appellants admits the execution of the note and mortgage, and that appellees owned and occupied the premises as a homestead, substantially as set forth in the bill, and that the facts are as embodied in the following stipulation of the counsel of the respective parties:

It is stipulated and agreed between the complainants in the above entitled cause and the defendants, that the complainant Calvin R. Smythe was a member of said association October 4, 1875, and at a meeting of the board of directors of said association held on that day, said Smythe obtained a loan from said association, under the rules and regulations of the charter of said association and of the

statute of Illinois, under which said association is organized, amounting to the sum of $600; that said Smythe bid as a premium for said loan the sum of $180, which was deducted from said sum of $600, leaving the sum of $420, which said Smythe received the benefit of from said association; that the mortgage to secure said loan of $600 was for the whole amount of said $600; that it was executed to said association by said Smythe and wife, and duly recorded; that said Smythe became a member of said association in September, 1875, purchasing at that time eight shares of the stock of said association for $129.52, for which he executed his note to said association in addition to the note for $600, which he afterwards executed for said loan of $600, making in all the sum of $729.52, for which the said association holds the notes of said Smythe; that said Smythe, from the time he became a member of said association till the month of February, 1877, paid said association, under the provision of the charter, $68 on dues, $88.42 on interest, and $16.62 on fines, making a total of $173.04; that said Smythe never paid anything to said association after February 3, 1877, and that at a meeting of the board of directors of said association, held December 3, 1877, said board directed the solicitor of said association to proceed to advertise and sell the mortgaged premises under the power contained in said mortgage; that at that time said Smythe was more than six months in default in his payments to said association; that said association, by its solicitor, did, on the 2d day of December, 1878, sell said premises under the power contained in said mortgage, and the same was struck off and sold to the association for the sum of $633.33, and said association received a deed for said premises in accordance with the provisions of such mortgage; that said premium was deducted, and said fines assessed and collected, in accordance with the provisions of the charter of said association; that the legal title to said premises at the time said Smythe and wife executed said

mortgage to said association, and up to the time said premises were sold by said association as aforesaid, was in the said Calvin R. Smythe; that at the February term, 1879, of the circuit court of Piatt county, said association obtained a judgment against said Calvin R. Smythe for the possession of said premises; that said Aramentia M. Smythe was not in any way made a party to such suit; that she was, at the time such suit was commenced, residing with her husband, Calvin R. Smythe, on said premises, and that a writ of restitution issued on such judgment, and is now in the hands of said defendant William M. Holmes, sheriff of Piatt county aforesaid, for execution; that said association was organized under the act of the General Assembly of the State of Illinois, entitled "An act to enable associations of persons to become a body corporate to raise funds to be loaned only among its members," approved April 4, 1872, in force July 1, 1872; that the aforesaid facts are to be submitted to the court either on motion to dissolve the injunction, or on the hearing, and that the only points to be decided by the court are whether said association had the legal right to deduct the aforesaid premium and assess and collect the aforesaid fines; and whether such acts constitute usury on the part of said association; and whether the complainants are not entitled to have the mortgaged premises sold on the mortgage of said association and that of the complainants subject to redemption; and whether the fact of said Aramentia M. Smythe not being made a party to said detainer proceedings is any defence as against the writ issued on said judgment; and whether the law under which the association is organized is constitutional.

The mortgage is conditioned, that "Calvin R. Smythe, being the owner of six shares of the capital stock of the mortgagees, and having obtained an advanced loan thereon of $600, for use, according to the previous act of the General Assembly of Illinois, approved April 4, 1872, in force July 1, 1872, under which said association is incorporated,

and of the charter and by-laws adopted by said association, and for which sum he has given his promissory note of even date herewith, payable to the mortgagee, whenever it may be necessary for the proper liquidation of said association, for said sum of $600, with ten per cent interest per annum from date, payable monthly, to the secretary of said association, on the first Saturday of each and every month, with the agreement on the liquidation of said association to accept the surrender of said note in full of his six shares of the capital stock of said association upon which the money has been advanced; and whereas, the said Calvin R. Smythe is bound by the charter and by-laws, and by reason of his membership in said association, to pay to said association the monthly dues of fifty cents on each of said shares, the interest on the said sum so advanced, as aforesaid, and any and all fines, penalties or other charges which, under the charter and by-laws of said association, may be assessed against him, or said stock, or any part thereof, in the manner, and amount, and at the times, as now or hereafter may be prescribed by the charter and by-laws of said association; provides for insurance and payment of taxes by mortgagor; now, if said Calvin R. Smythe shall pay said sum of money to the said association, according to the terms of said note therefor, and shall well and faithfully perform each and every of his obligations, and pay said association his monthly dues and interest, his fines, penalties, or other charges which, under the charter and by-laws of said association may be assessed against him, or said shares of stock, or any part thereof, and shall pay taxes assessed, or to be hereafter assessed, upon said premises, and keep the same insured, and in repair, as provided in the charter and by-laws of said association, then this obligation to be void, otherwise to remain in full force and effect."

Further provisions as to loss by fire: "providing that amount received from insurance may be applied in reducing

the mortgage security, or in rebuilding; and on the liquidation of the association, if not used in rebuilding, it shall be placed to the credit of the said Smythe."

Appoints solicitor of the mortgagee upon default, or breach of any of the conditions, agreements or covenants of the said note, or this mortgage, to sell and dispose of the premises at public auction, etc., with power of conveyance, the expenses to be paid out of the proceeds, as provided therein, among others:

"*Second.* The said principal sum of $600 and accrued interest thereon, and proportion of losses and expenses, as specified in section 14 of article 2 of the charter of said association, and all unpaid fines and penalties on the amount of monthly dues paid in on said shares of stock, the amount due on said note to be ascertained from the books of the association."

Provisions as to application of surplus, if any:   *   *   *
"It is understood and agreed, that when said association shall go into liquidation, it shall execute to the said Calvin R. Smythe, at his expense, a release of this mortgage," etc. In case of foreclosure, "the amount of dues the said Calvin R. Smythe may have paid said association shall be deducted from the amount found due in any such decree, and the stock owned by Calvin R. Smythe in the association shall be decreed to be forfeited to said association."

The decree sets aside and declares the deed vacated and void; that Smythe pay the association $411 within four months from filing of decree, with six per cent interest, and upon payment of said association, to deliver to said Smythe the note and mortgage mentioned in the bill, cancelled and released of record, and upon default in such payment the association to be permitted to sell said premises under the power contained in said trust deed for said $411, and interest and costs of sale; that the defendant Holmes be enjoined from executing the writ of possession, and that the asso-

ciation pay the costs of suit, and execution issue therefor, etc.

The case comes here by the appeal of the defendants in the court below.

Messrs. LODGE & HUSTON, Mr. HENRY V. FREEMAN, and Mr. J. D. ADAIR, for the appellants.

Mr. ALBERT EMERSON, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

When we first considered this case we were under a mis-apprehension, resulting from the meagreness of the statement in regard to the facts. We then assumed that the promissory note was payable, at all events, for the amount expressed upon its face, together with ten per centum per annum interest thereon, and that the premium bid had, also, in good faith been paid, and we thereupon concluded that the transaction was usurious, and in so far as any law, applicable alone to such corporations, purported to give sanction to and legalize it, it should be held void because in conflict with certain clauses of sec. 22, art. 4, of our constitution. That conclusion can not be sustained upon what we now understand to be the facts.

The appellant association was organized under the general law authorizing the formation of such associations, approved April 4, 1872, and in force July 1, 1872. (2 Gross' Stat. p. 67.) The sixth section of that act provides, that the shares of the stock shall be $100 each; that subscriptions therefor shall be made payable to the corporation in such periodical installments, and at such time or times, as shall be determined by the charter and by-laws, but no periodical payment to be made exceeding two dollars on each share; and that every share of stock shall be subject to a lien for the unpaid installments and other charges incurred thereon under the provisions of the charter and by-laws. And the eighth

section provides, that the board of directors shall hold such stated meetings as may be provided by the by-laws, at which the money in the treasury, if over $100, shall be offered for loan in open meeting, and the stockholder who shall bid the highest premium for the preference or priority of loan shall be entitled to receive a loan of $100 for each share of stock held by said stockholder; and that in case of non-payment of installments or interest by borrowing stockholders for the space of six months, payment of principal and interest, without deducting the premiums paid or interest thereon, may be enforced by proceeding against their securities, according to law. The ninth section provides, that the borrower may repay a loan at any time, and in case of the repayment thereof before the expiration of the eighth year after the organization of the corporation, there shall be refunded to such borrower one-eighth of the premium paid for every year of the said eight years then unexpired.

Smythe became a member of the association in February, 1875, subscribing for eight shares of stock, and on the 4th of October, 1875, desiring to obtain money on six of his shares of stock, he bid as premium therefor $30 on each share. This bid was accepted by the association, and the par value of his six shares of stock, less the premium bid, ($70 on each share, and $420 in all,) was advanced to him, and he thereupon executed the note and mortgage in controversy. This note, it is expressly shown, although for $600, is only to secure the payment of the interest to accrue upon the par value of the shares, and dues of fifty cents on each share monthly, as also fines, penalties and forfeitures, etc., and upon liquidation of the association the note was to be surrendered to Smythe, and accepted by him in full for his six shares of stock. This would happen when the shares of stock would reach their par value, so the transaction was, in fact, an advancement by the association in anticipation of that time. The transaction is in the nature of a sale by

Smythe of his shares of stock to the association, and it has been so held by other courts. *Hoboken Building Association v. Martin,* 2 Beasley, 427; *Clarksville Building Association v. Stephens,* 26 N. J. 351; *Delano v. Wild,* 6 Allen, 1; *Merrill v. McIntyre,* 13 Gray, 157.

But if the transaction be treated as a loan, it is not, from what here appears, necessarily usurious. When the money was obtained the association had but five years and seven months to continue under the statute, it having been organized two years and five months previous to that time, and its duration being limited to eight years. The dues and interest, which the note secured, amount to $8 per month ($3 dues and $5 interest). At the end of five years and seven months (sixty-seven months) this would amount to only $536. The rate of interest then authorized for money loaned was ten per cent per annum. The amount received ($420), at ten per cent, in five years and seven months, would bring $234.50, which, added to the principal, would make $654.50, that would have had to have been paid, treating the money received as a loan, at ten per cent. This, of course, requires that Smythe should have kept his contract, but that is what we must assume was the intention of the parties when the contract was made. It was his duty to keep his contract, and it was legally within his power to have done so. Being compelled to pay the face of the note, as well as accumulating interest, etc., is simply the result of the failure of Smythe to comply with his contract, and for which, it would seem, he had reasonable time; and this obligation may be regarded as one in the nature of liquidated damages, such as all parties were, at that time, at liberty to annex as a condition of the non-performance of their contracts, and it is, in no sense, under the law then in force, as held by previous decisions of this court, a regulation of interest upon money, or obnoxious to the charge of usury. *Lawrence v. Cowles,* 13 Ill. 577; *Gould v. Bishop Hill Colony,* 35 id. 324;

*Davis* v. *Rider,* 53 id. 416; *Witherow* v. *Briggs,* 67 id. 96. This is still further manifest by reference to the ninth section of the charter, which, it has been seen, authorizes the borrower to repay the loan at any time, which would restore his shares of stock to him, and have refunded one-eighth of the premium bid for each year of the eight years unexpired of the life of the association. And for like reason, as has been held by this court in *Bane* v. *Gridley,* 67 Ill. 388, the case is not one in which relief will be granted by a court of equity, as against a penalty.

In other respects we perceive no valid objection to the transaction. The statute under which the association was organized is a general law, applicable to all the citizens of the State who choose to bring themselves within the relations and circumstances provided for by it. We are of opinion that it is free of constitutional objection, in so far, at least, as it has any bearing upon the facts now before us.

The decree of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*

WALKER and DICKEY, JJ., dissent.